# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **CHARLOTTE BRIGGS** | * | **CIVIL ACTION NO. 09-0886** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Charlotte Briggs, born December 29, 1945, filed an application for a period of disability and disability insurance benefits ("DIB") on January 18, 2006, alleging disability as of October 1, 2000, due to a spinal injury, peripheral neuropathy, memory problems, hypertension, diabetes, nasal problems, loss of use of her legs, neck problems, and headaches.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant

---

[1] Claimant remained insured for DIB through December 31, 2005. (Tr. 15). Thus, she must establish disability prior to that time.

was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from Dr. M. J. Jolivette dated December 9, 2003 to January 20, 2006**.  Claimant's glucose level was high on December 9, 2003.  (Tr. 128).  But, she had good response to Tricor on January 15, 2004.  (Tr. 127).  Her values had all improved on March 4, 2004.  (Tr. 126).

On April 15, 2004, Dr. Jolivette reported that claimant had had low blood sugars in the recent past, but he suspected that her change in diet and exercise program had both contributed to her hypoglycemic episodes.  (Tr. 124).

On May 14, 2004, Dr. Jolivette reported that he had made adjustments in claimant's diabetic management, which had been a major risk factor for her.  (Tr. 121).  She was taking Avandia and Amaryl, and he added Glucophage.

On August 30, 2004, claimant complained that she was having a lot of gynecological problems, for which she was being seen by Dr. Mike Hindelang.  (Tr. 118).  She had controlled blood pressure.

On May 17, 2005, claimant had done very well since her last visit. (Tr. 107). She had no acute problems, except for symptoms of menopause. Dr. Jolivette encouraged her to remain active in her health club.

On October 18, 2005, claimant was doing well in general, despite having major health problems including diabetes mellitus, hyperlipidemia, essential hypertension, and hypothyroidism. (Tr. 102). She had been deliberate with the control of her diabetes, and had been good about her diet.

On October 27, 2005, claimant presented with bobbing of her head. (Tr. 101). Dr. Jolivette thought that it seemed to be an early tremor that she was developing. It became worse when she tried to do anything, such as sewing or focusing on an object. He increased her Metoprolol from 50 to 75 mg at bedtime.

On January 17, 2006, claimant was not ambulating as well as she had in the past, and had had some awkward steps. (Tr. 97). Dr. Jolivette ordered an MRI of the brain, which was normal. (Tr. 96).       .

**(2) Psychiatric Review Technique ("PRT") form dated April 12, 2006**. Joseph Kahler, Ph.D., found that there was insufficient evidence in the record to make a finding. (Tr. 131).

**(3) Residual Functional Capacity ("RFC") Assessment – Physical dated April 17, 2006**. There was insufficient evidence to fully determine if claimant

was disabled prior to her date last insured of December 31, 2005.  (Tr. 146-52).

**(4) Records from Dr. Jolivette dated April 19, 2006 to November 29, 2007**.  On April 19, 2006, claimant was no longer on medication which she had taken in the past.  (Tr. 160).  Generally, she was doing well, except for depression.  She was given samples of Lexapro.

On June 15, 2006, claimant reported that her tremor was much better while on Inderal.  (Tr. 156).

On April 27, 2007, claimant had symptoms of hay fever.  (Tr. 186).  Her blood sugar had been within a controlled range.  She also had some discomfort in her upper abdomen, and she had a ventral hernia which did not require any surgery.

In Medical Source Statement dated May 15, 2007, Dr. Jolivette wrote that claimant could rarely lift and carry 10 pounds.  (Tr. 182).  She could stand 30 minutes at one time.  She could walk one city block without symptoms.  She could stand/walk less than two hours in an 8-hour workday.  She could sit for 30 minutes at one time, and less than two hours in an 8-hour workday.

Claimant was limited as to reaching, handling, feeling, and fingering.  (Tr. 183.  She needed to take unscheduled breaks for 15-30 minutes at a time because of pain and numbness/loss of sensation.  She required environmental protections

because of her long history of sinus disease.  She would need to miss work or leave early at least once a week.  Her hypoglycemia would also have implications for her working.

On August 21, 2007, claimant was doing well in general.  (Tr. 171).  She was no longer on Actos, and her blood sugars had been more difficult to control.

A venous carotid ultrasound taken on October 24, 2007, showed 10 to 15% stenosis of the proximal right and proximal left internal carotid arteries.  (Tr. 179).  Lumbar spine x-rays revealed degenerative changes with degenerative disc disease at L3-4, L4-5, and L5-S1, and scoliosis.  (Tr. 177).

On November 29, 2007, Dr. Jolivette wrote that one of claimant's concerns was an essential tremor which had developed roughly two years prior.  (Tr. 202).  It had started with her head and with her hands and arms.  Her tremor became worse whenever she intended to do something, like drink coffee or sew.  She could not sustain any writing activity or do any typing because of the tremor.  She was put on a beta blocker to help control this complaint.  Dr. Jolivette opined that "[h]er treatment will be life time, since this will not go away, and at best, the only result that she will have, is a control of this problem.  Her control may not be 100% each day."

Claimant also had a long history of diabetes mellitus, which became worse beginning in May of 2004. She was on insulin therapy. (Tr. 203). She had had fluctuations in her blood sugars, especially with episodes of hypoglycemia, which caused her periods of confusion and light-headedness. She had lost 20 pounds in an effort to keep her diabetes under control. Dr. Jolivette stated that "[t]his problem will be a life time of difficulty."

Dr. Jolivette reported that claimant had been experiencing difficulty in ambulation since January 17, 2006. He stated that this was considered to be secondary to a diabetic neuropathy. He recommended nerve conduction studies, noting that cost had been an issue. He noted that she would need medication to control this consequence of having diabetes.

Dr. Jolivette opined that claimant had not shown any ability to work eight hours a day since at least October 25, 2005, or to maintain a level of concentration in doing her work. He noted that she had significant joint disease, and had had surgery for cervical disc disease. This limited the range of motion of her neck, causing chronic pain and numbness in her right arm. She had also had surgery for carpal tunnel syndrome, but still had numbness in her fingers which made it difficult for her to use her hands. He stated that claimant needed intervals of rest,

because she could not stand or sit for any length of time.  She used medication relieve her pain, which was related to her underlying neuropathy.

**(5) Claimant's Administrative Hearing Testimony**.  At the hearing on November 13, 2007, claimant was 61 years old.  (Tr. 220).  She had two years of college.

Claimant had past work experience as a lounge operations supervisor in her own business.  (Tr. 221-22).  She last worked for about two months as a bookkeeper/receptionist.  (Tr. 221).  She testified that she had stopped working because of leg pain, confusion, and inability to follow directions.  (Tr. 221, 223).

Claimant testified that she was taking pills for diabetes, and had recently started taking insulin.  (Tr. 223).  Additionally, she had hyperthyroidism, which caused her to feel fatigued.  (Tr. 224-25).  She also had cholesterol problems and hypertension, which was controlled with medication.  (Tr. 225).

Back in 2005, claimant had chronic headaches from her neck, and pain from diabetic neuropathy.  (Tr. 227).  She had bad headaches, lasting 30 minutes to all night, about every two weeks.  (Tr. 227-28).  She also had a tremor of her head and hands.  (Tr. 233).

As to restrictions before December 31, 2005, claimant testified that she could not walk a whole block because of leg pain.  (Tr. 229).  She could sit for

about an hour with changing positions. (Tr. 230). She stated that she could stand for about 15 minutes. (Tr. 231). She said that she could probably lift 10 pounds on a regular basis. (Tr. 232).

Regarding activities, claimant testified that she played pool on a team. (Tr. 232-33). She spent most of her day watching soap operas on television and lying around. (Tr. 235).

**(6) The ALJ's findings**. Claimant argues that the ALJ erred at Step 2 of the sequential evaluation process in finding that she did not suffer from a severe combination of impairments.

First, claimant argues while the ALJ acknowledged she had alleged a spinal injury, peripheral neuropathy, memory problems, hypertension, diabetes, nasal problems, loss of use of her legs, neck problems, and headaches, he erred in failing to find that these impairments were severe. [rec. doc. 8, p. 3]. Specifically, she asserts that the ALJ failed to apply the proper standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), which is as follows: "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

Claimant asserts that Dr. Jolivette's records substantiate her complaints of diabetes mellitus and hypoglycemic episodes. [rec. doc. 8, p. 5]. While the ALJ acknowledged these complaints, he did not find them severe. (Tr. 16).

The records reflect that claimant had had high glucose and cholesterol levels in December, 2003, but had responded well to adjustments in medications by January, 2004. (Tr. 127-28). All of her values had improved as of March 4, 2004. (Tr. 126). As to claimant's hypoglycemia, Dr. Jolivette noted that she had had low blood sugars in the past, but suspected that her change in diet and exercise program had contributed to these episodes. (Tr. 124). On May 17 and October 18, 2005, she was doing well, and her review of symptoms was unremarkable. (Tr. 102, 107).

However, on October 27, 2005, claimant presented with bobbing of her head, which Dr. Jolivette opined was an early tremor that she was developing. (Tr. 101). On November 29, 2007, he wrote that one of claimant's concerns was an essential tremor which had developed roughly two years prior. (Tr. 202). He stated that "[h]er treatment will be life time, since this will not go away, and at best, the only result that she will have, is a control of this problem. Her control may not be 100% each day."

In Dr. Jolivette's Medical Source Statement dated May 15, 2007, he found that she could rarely lift 10 pounds, stand for only 30 minutes at one time, walk only one city block, stand/walk for less than two hours, sit for only 30 minutes at a time and a total of two hours, was limited as to reaching, handling, feeling, and fingering, had to take breaks every hour, and had environmental limitations. (Tr. 182-83). He does not indicate when these limitations commenced.

In the reply brief, claimant argues that the ALJ should have requested additional evidence or clarification from Dr. Jolivette regarding her impairments, citing *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). [rec. doc. 10, p. 2]. *Newton* states that if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e). (emphasis added). *Id.* at 453.

Here, Dr. Jolivette wrote on November 29, 2007, that one of claimant's concerns was an essential tremor which had developed roughly two years prior. (Tr. 202). However, he did not explain how he came up with that date, nor the cause for this complaint. Thus, I find that clarification or additional evidence

from Dr. Jolivette is necessary to determine whether this condition developed prior to claimant's date last insured, and if it is indeed disabling.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g).  This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to seek clarification from Dr. Jolivette as to whether claimant's tremor developed prior to claimant's date last insured, and if this condition is disabling.  Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL**

**CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed September 7, 2010, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE